# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, TROPICAL AUDUBON SOCIETY, and the MIAMI BLUE CHAPTER of the NORTH AMERICAN BUTTERFLY ASSOCIATION<br><br>Plaintiff,<br><br>v.<br><br>DEBRA HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior; the U.S. DEPARTMENT OF THE INTERIOR; MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service; and the U.S. FISH AND WILDLIFE SERVICE,<br><br>Defendant. | Case No. 2:22-cv-14244 |

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1

## INTRODUCTION

1.        Plaintiffs Center for Biological Diversity, Tropical Audubon Society, and the Miami Blue Chapter of the North American Butterfly Association (collectively, "Plaintiffs") challenge the U.S. Fish and Wildlife Service's ("Service") failure to comply with nondiscretionary deadlines set forth in the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. The Service failed to designate critical habitat concurrently with its decision to list the Florida bonneted bat as endangered on October 2, 2013, within one year from that date after it found critical habitat was not then determinable, and within one year of its proposal to designate critical habitat on June 10, 2020. *Id.* § 1533(a)(3)(A)(i), (b)(6)(C)(ii). By consistently failing to fulfill its statutory duty to designate critical habitat according to mandatory deadlines, the Service is violating the ESA.

2.        Named for its large, bonnet-like ears, the Florida bonneted bat is Florida's largest bat. As the state's only endemic flying mammal, it lives nowhere else in the world but in Florida. Now found in less than a dozen counties in the state, the Florida bonneted bat is facing extinction primarily from habitat destruction and degradation caused by urban sprawl and rising seas driven by global climate change.

3.        Having listed the bat on October 2, 2013, and concurrently concluding that critical habitat was not then determinable, the ESA required the Service to designate critical habitat by October 2, 2014. Following litigation, the Service published a proposed rule to designate critical habitat for the Florida bonneted bat on June 10, 2020.

4.        The Service was required to submit a final designation of critical habitat for the Florida bonneted bat within a year of the proposed rule, by June 10, 2021, but it has yet to do so. Consequently, the Service has and continues to be in violation of the ESA.

5. To ensure the bat receives the lifesaving habitat protections it needs and is entitled to under the ESA, Plaintiffs bring this action for declaratory relief against Debra Haaland, in her official capacity as Secretary of the Interior; Department of the Interior; Martha Williams, in her official capacity as Director of the United States Fish and Wildlife Service; and the United States Fish and Wildlife Service to affirm Defendants are in violation of the ESA and Administrative Procedure Act (APA) for failing to designate critical habitat for the Florida bonneted bat in accordance with mandatory statutory deadlines. Plaintiffs respectfully request that this Court compel the Service to issue its final rule designating critical habitat that is vital for Florida bonneted bat's survival.

## JURISDICTION AND VENUE

6. Plaintiffs bring this action under the Endangered Species Act, 16 U.S.C. §§ 1533, 1540(g), and the Administrative Procedure Act, 5 U.S.C. § 706.

7. The Court has jurisdiction over this action under 16 U.S.C. § 1540 (c) & (g) (actions arising under the citizen suit provision of the Endangered Species Act), 5 U.S.C. § 702 (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1346 (United States as a defendant).

8. The relief sought is authorized under 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), 16 U.S.C. § 1540(g) (ESA), and 5 U.S.C. § 702 (APA).

9. Plaintiffs provided Defendants sixty (60) days' notice of their intent to sue over the ESA violations listed herein pursuant to the ESA's citizen-suit provision, *Id.* § 1540(g)(2)(A)(i), by letter dated February 7, 2022. Because Defendants have not remedied the legal violations outlined in the notice by the date of this Complaint's filing, there exists an actual,

3

justiciable controversy between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201.

10. Venue in proper in the United States District Court for the Southern District of Florida according to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A) because a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

11. The Center for Biological Diversity ("Center") is a nonprofit 501(c)(3) organization incorporated in the State of California and headquartered in Tucson, Arizona, with offices across the country, including in Arizona, California, Florida, New York, North Carlina, Oregon, Washington, and Washington, D.C., and in Baja California Sur, Mexico. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats both in the United States and abroad. The Center has more than 89,500 active members, including members with recreational, scientific, professional, aesthetic, spiritual, and ethical interests in the Florida bonneted bat and its habitat

12. For example, one Center member was a volunteer at the Florida Panther National Wildlife Refuge for ten years, where she assisted with Florida bonneted bat data collection at one of the few natural roost sites. The member was also a board member for Friends of the Florida Panther National Refuge for ten years She routinely hikes, kayaks, and birdwatches in bat habitat at the Big Cypress National Preserve, Fakahatchee Strand, and CREW Flint Pen Strand.

13. Tropical Audubon Society ("TAS") is a nonprofit 501(c)(3) organization incorporated in the State of Florida and headquartered in Miami, Florida. TAS is a science-and solutions-based nonprofit conservation organization driven by its grassroots community and principles of equity, diversity and inclusion. TAS' legacy is to protect, conserve and restore

South Florida ecosystems by working closely with local governments and other stakeholders, and by fostering wise stewardship of native habitats, birds, and other indigenous wildlife. TAS has more than 1,000 active members, including members who appreciate and have ethical, recreational, and aesthetic interests in the Florida bonneted bat and its habitat.

14. For Example, one TAS member routinely kayaks and canoes in the Fakahatchee Strand and Big Cypress National Preserve and has concrete plans to do so again soon. Knowing that these areas provide habitat for the Florida bonneted bat and other endangered species is a primary reason she visits. She has been fascinated with bats since she was young and has routinely sought out interactions with many bat species, including the Florida bonneted bat. She has also provided written comments to Miami-Dade commissioners concerning urban expansion and threats to the Florida bonneted bat.

15. The Miami Blue Chapter ("Miami Blue") of the North American Butterfly Association is a non-profit organization dedicated to lepidopteran (butterflies and moths) conservation, research, and educational outreach. Miami Blue is located is Southeast Florida, a unique region in the continental United States harboring the globally imperiled pine rockland ecosystem with high biodiversity and endemism. Miami Blue strives to preserve biodiversity and prevent catastrophic ecosystem service failures beneficial to people and wildlife. Miami Blue believes protecting the Florida bonneted bat's habitat will also protect habitat for imperiled lepidopterans, which directly and indirectly will protect other wildlife and maintain the ecological integrity of the pine rockland ecosystem.

16. One member of Miami Blue routinely leads nature walks throughout Miami-Dade County and participates in annual butterfly counts in Florida bonneted bat habitat. He prepared, on behalf of Miami Blue, the public comment letter addressed to the Service regarding the

initially-proposed critical habitat for the subject bat species. He has advocated for the protection of this bat species to local governments, including the cities of Coral Gables and Miami, and Miami Dade County.

17. Defendants' failure to meet the ESA's nondiscretionary deadlines to designate critical habitat for the Florida bonneted bat denies this species the protection it needs to survive, which in turn injures the Plaintiffs' interests. For example, while the Service continues to delay designating critical habitat, imminent development plans threaten to destroy or degrade even more key habitat before it can receive protections. This ongoing habitat loss, absent protections, harms the bat's chances to survive and recover. Therefore, Defendants' failure to designate critical habitat harms and will continue to injure Plaintiffs' and their members' interests in the Florida bonneted bat and the protection of its habitat. These injuries are actual, concrete injuries presently suffered by Plaintiffs' members; are directly caused by Defendants' inaction; and will continue to occur unless this Court grants relief.

18. The relief sought in this case—an order compelling the Service to designate critical habitat—would redress these injuries by protecting the Florida bonneted bat's habitat before it can be further degraded or destroyed, thereby protecting the bat from extinction so Plaintiffs and their members can continue to pursue their interests in the bat and its unique habitat. Plaintiffs and their members have no other adequate remedy at law.

19. Defendant Debra Haaland is the Secretary of the United States Department of the Interior. By holding this position, she is ultimately responsible for administering the provisions of the ESA, including timely designation of critical habitat for listed species, as well as all other federal laws that apply to the Department of the Interior. Plaintiffs sue Defendant Haaland in her official capacity.

20. Defendant United States Department of the Interior is an agency of the United States responsible for administering the ESA for most terrestrial and non-marine species, including the Florida bonneted bat.

21. Defendant Martha Williams is the Director of the United States Fish and Wildlife Service. By holding this position, she is responsible for enforcing the provisions of the ESA, including timely designation of critical habitat for listed species, and regulations promulgated in accordance with the ESA, as well as any other federal laws that apply to the Service. Plaintiffs sue Defendant Williams in her official capacity.

22. Defendant United States Fish and Wildlife Service is a federal agency that is a part of the Department of the Interior. The Secretary of the Interior has delegated to the Service authority to administer the ESA, including provisions requiring timely designation of critical habitat for endangered species. 50 C.F.R. § 402.01(b).

23. Defendants United States Department of the Interior; United States Fish and Wildlife Service; Debra Haaland, in her official capacity as Secretary of the United States Department of the Interior; and Martha Williams, in her official capacity as Director of the Service, have waived sovereign immunity in this Action pursuant to 16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

## STATUTORY AND REGULATORY FRAMEWORK

24. In 1973, recognizing that certain species "have been so depleted in numbers that they are in danger of or threatened with extinction," Congress enacted the Endangered Species

Act, 16 U.S.C. §§ 1531–1544, "to provide a means whereby the ecosystems upon which endangered and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." *Id.* § 1531(a)(2), (b). Considered "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation," the ESA embodies the "plain intent" of Congress to "halt and reverse the trend toward species extinction, whatever the cost." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180, 184 (1978). The ESA's goal is not simply to prevent endangered and threatened species from becoming extinct but to recover these species to the point where they no longer require the statute's protections. *Id.*

25.     To serve its purpose, the ESA demands that the Service, through its authority delegated by the Secretary of the Interior, determine which species are threatened or endangered and list them as such. 16 U.S.C. § 1533(a)(1). A species is endangered if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is threatened if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

26.     When a species is listed as threatened or endangered, it receives a host of key protections designed to prevent its extinction and support its recovery, including one of the most crucial protections—safeguards for critical habitat. *Id.* § 1533(a)(3)(A).

27.     Critical habitat includes specific areas occupied by the threatened or endangered species with "those physical or biological features essential to the conservation of the species and which may require special management considerations or protection." *Id.* § 1532(5)(A) (cleaned up). Areas unoccupied by the species that "are essential for the conservation of the species" are also included within the definition of critical habitat. *Id.*

28. Designating critical habitat provides species vital protection because, once designated, federal agencies are required to ensure that their actions do not "jeopardize the continued existence of any endangered species or threatened species *or result in the destruction or adverse modification of [critical] habitat*." *Id.* § 1536(a)(2) (emphasis added).

29. The ESA requires the Service to designate a species' critical habitat concurrently with its determination to list the species as threatened or endangered "to the maximum extent prudent and determinable." *Id.* § 1533(a)(3)(A)(i).

30. If critical habitat is found to be "not then determinable," the Service may extend its one-year period for publishing a final regulation designating critical habitat by "not more than one additional year." *Id.* § 1533(b)(6)(C)(ii). If such a decision is made, the Service "must publish a final regulation, based on such data as may be available at that time, designating" critical habitat by "no later than the close of such additional year." *Id.*

31. The ESA also requires the Service to publish a final regulation implementing a designation of critical habitat within a year of the publication of its proposed regulation to designated critical habitat. *Id.* § 1533(b)(6)(A)(ii).

32. The ESA does not safeguard a species' critical habitat until the Service designates it. Accordingly, it is vital that the Service meticulously follow the ESA's procedures and deadlines to ensure it designates critical habitat in a timely manner.

## FACTUAL BACKGROUND

33. The Florida bonneted bat, pictured below, is the largest species of bat in Florida. It is named for its large, distinctive ears. 78 Fed. Reg. 61,004 (Oct. 2, 2013).



Photo Credit: Wikimedia Commons / Kathleen Smith, Florida Fish and Wildlife Commission

34. It "has one of the most restricted distributions of any species of bat," *Id.* at 61,010, which is likely to be further curtailed by "habitat loss, degradation, and modification from human population growth and associated development and agriculture." *Id.* at 61,039. The bat and its habitat are also threatened by climate change, sea level rise, and coastal squeeze—a phenomenon where species and their habitat become trapped between urban development and continuously rising seas and are ultimately squeezed out of existence. *Id.* Natural factors, such as small population size and slow reproduction, work synergistically with habitat threats to put the species at significant risk of extinction. *Id.* at 61,033. There are an estimated 26 colonies within the species' range, with a total population of only 286 bats. *Id.* at 61,012.

35. Recognizing the imminent threat of extinction, the Service proposed to list the Florida bonneted bat as endangered on October 4, 2012. 77 Fed. Reg. at 60,749 (October 4, 2012). At that time, the Service found critical habitat for the Florida bonneted bat was not then determinable. *Id.* at 60,750.

36. The Service issued a final rule listing the Florida bonneted bat as endangered on October 2, 2013. 78 Fed. Reg. 61,004 (Oct. 2, 2013). Despite explicitly finding the bat is

endangered by "habitat loss, degradation, and modification from human population growth and associated development and agriculture" as well as "sea-level rise and coastal squeeze," the Service again found critical habitat to be not determinable and did not designate or propose critical habitat. *Id.* at 61,004, 61,042.

37. Accordingly, Plaintiffs filed a complaint against the Service on October 22, 2018, for failing to designate critical habitat for the Florida bonneted bat. *Center for Biological Diversity et al. v. Zinke et al.*, Case 1:18-cv-02407 (D.D.C. Oct. 22, 2018). In response, the Service agreed to submit a proposed determination for the designation of critical habitat to the office of the Federal Register on or before May 15, 2020. *Stipulated Settlement Agreement Center for Biological Diversity v. Bernhardt*, 1:18-cv-02407-RMC, 3 (D.D.C Feb. 12, 2020).

38. The Service published a proposed regulation on June 10, 2020, in which it proposed to protect 1.5 million acres as critical habitat for the Florida bonneted bat. 85 Fed. Reg. 35,510 (June 10, 2020).

39. The Service had a statutory duty to issue a final regulation designating critical habitat within a year of its June 10, 2020 proposed regulation, on June 10, 2021. It has been more than a year since the Service published that proposed regulation—and more than eight years since the Service's original duty to concurrently designate critical habitat arose— and as of the date of this Complaint, the Service has still not issued a final rule designating critical habitat for the Florida bonneted bat.

40. Designated critical habitat provides important protection for listed species beyond merely listing as endangered or threatened. Once a species is listed under the ESA, federal agencies must ensure that any action they authorize, fund, or carry out will not "jeopardize the

11

continued existence of any [listed] species" or "result in the destruction or adverse modification" of the species' designated critical habitat. 16 U.S.C. § 1536(a)(2).

41. The Service's failure to designate critical habitat for the Florida bonneted bat violates the ESA, *Id.* § 1533(a)(3)(A), (b)(6)(A), (C), and its implementing regulations, and constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

## PLAINTIFFS' CLAIM FOR RELIEF
### (Failure to Designate Critical Habitat for the Florida Bonneted Bat)

42. The Center re-alleges and incorporates by reference all the allegations set forth in contained in paragraphs 1 through 41.

43. The ESA requires Defendants to designate critical habitat for the Florida bonneted bat within one year of proposing critical habitat, 16 U.S.C. § 1533(b)(6)(A)(ii).

44. Defendants published a proposed rule to designate critical habitat for the Florida bonneted bat on June 10, 2020, but more than a year later, they still have not published a rule finalizing that proposal and are thus in violation of the ESA's express statutory command to timely designate critical habitat within one year of a proposed regulation designating critical habitat.

45. Plaintiffs and their members are injured by the Service's failure to comply with the ESA's nondiscretionary deadlines to designate critical habitat for the Florida bonneted bat.

46. The Service has violated the Endangered Species Act, 16 U.S.C. § 1533(a)(3)(A), (b)(6)(A), (C), as well as its implementing regulations, by failing to designate critical habitat for the Florida bonneted bat. This failure also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter a Judgment for Plaintiffs providing the following relief:

(1) Declare that Defendants violated the Endangered Species Act and Administrative Procedure Act by failing designate critical habitat for the Florida bonneted bat;

(2) Order Defendants to designate, by a date certain, final critical habitat for the Florida bonneted bat under the Endangered Species Act, 16 U.S.C. § 1533(a)(3)(A);

(3) Award Plaintiffs the cost of this action, including reasonable attorneys' fees; and

(4) Provide such other relief as this Court deems just and proper

DATED: July 6, 2022                                    Respectfully submitted,

/s/ **Ragan Whitlock**
Ragan Whitlock (Florida Bar Number: 1034177)
rwhitlock@biologicaldiversity.org
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (727) 490-9190


/s/ **Elise Pautler Bennett**
Elise Pautler Bennett (Florida Bar Number: 106573)
ebennett@biologicaldiversity.org
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Telephone: (727) 755-6950
Facsimile: (520) 623-9797


*Attorneys for Plaintiffs Center for Biological Diversity, Tropical Audubon Society, and the Miami Blue Chapter of the North American Butterfly Association*